## Richmond

NORFOLK AND PORTSMOUTH BELT LINE RAILROAD COMPANY v. C. F. MUELLER COMPANY.

NORFOLK AND PORTSMOUTH BELT LINE RAILROAD COMPANY v. CLAUD M. FORBES.

November 28, 1955.

Record Nos. 4416, 4417.

Present, All the Justices.

The opinion states the case.

*Willcox, Cooke & Willcox,* for the plaintiff in error.

*Wolcott & Wolcott,* for the defendants in error.

WHITTLE, J., delivered the opinion of the court.

Plaintiff, Forbes, sued the railroad company for personal injuries suffered by him, and the plaintiff, Mueller Company, sued for property damages to its truck, growing out of a crossing accident. The cases were tried together. The jury returned a verdict for each plaintiff and, over the objection of the railroad, judgments were entered thereon. We granted the railroad writs of error in each case.

The record disclosed that Forbes, pursuant to his employment as a salesman for the Mueller Company, was driving his principal's 1947 Chevrolet panel truck along Louisa street in the City of South Norfolk, which is crossed by four tracks of the railroad. As he approached the railroad crossing the Growers Exchange building, which is practically adjacent to the tracks, was on his right. Stationed along the track nearest Forbes were four railroad box cars which had been so placed that the first abutted the right hand sidewalk of the street. Forbes' view to the right and down the tracks was obscured so that it was difficult for him to see the train approaching from that direction on the second track. He testified that the train could not be seen until he had reached a position beyond the box cars; that when in this position the front portion of his truck was on the second track on which the engine was approaching, and that "the collision followed simultaneously".

Plaintiffs, in their motions, alleged that the railroad "did carelessly and negligently run and operate said locomotive and train in a dangerous, unlawful and reckless manner * * * and * * * did fail to exercise due and proper care or give the proper signals, or provide the proper warning devices, and/or facilities, or comply with the laws of the said city or State * * *."

The court, after hearing the evidence, instructed the jury that Forbes was guilty of contributory negligence as a matter of law in that he "blindly undertook" to cross the tracks in front of the oncoming engine and that his negligence was imputed to his principal, the Mueller Company.

■ On appeal plaintiffs assigned cross-error (not argued at bar) based upon the refusal of the court to grant their offered instructions P-2, P-3, P-7, and P-11, which would have negatived the court's ruling as to Forbes' contributory negligence. Cross-error was also assigned to the granting of "each and every instruction granted at the instance of the defendant."

Instruction D-8 is the only instruction contained in the printed record. (See Rule 5:1, § 6(d)). A search through the manuscript record reveals only instructions P-2, P-7 and P-11. Instruction P-3 is not included, and nowhere does it appear that the plaintiffs objected to the court's refusal to grant the instructions requested by them. Neither did plaintiffs object or except to the granting of instructions on behalf of the defendant save in one instance where it is disclosed that they excepted to the granting of instruction D-8 "on the ground that the court has found that Forbes was guilty of contributory negligence as a matter of law". It is noted, however, that the assignments of cross-error do not cover the giving of this instruction. This being so, we cannot consider the cross-errors. (Rule 1:8). It follows, therefore, that on the record Forbes stood convicted of contributory negligence as a matter of law, which negligence was imputed to the Mueller Company.

At the conclusion of the plaintiffs' evidence, which included the testimony of Vernon Reynolds, locomotive engineer for the railroad (called as an adverse witness), the railroad company moved to strike on the ground that Forbes was guilty of contributory negligence, whereas it was uncontroverted that the engineer was not negligent because he approached the crossing at a rate of speed of not over 6 or 7 miles an hour, with the bell ringing. Counsel's statement in support of the motion was: "That is the positive, direct testimony of Mr. Reynolds. Against that you have only the negative evidence that the bell was not rung. We have the testimony of Mr. Forbes himself that this crossing was blind, that it was obstructed by the cars. There is no evidence of who put the cars there or whose cars they were. He (Forbes) could not see a thing down that track until he got on the track itself, and that his first observation to the right when he could see was when he got on the track, and that his looking and the engine running into him occurred simultaneously. He was going at a speed which he estimates was 5 miles an hour, with his car under control and could stop it instantly. * * * (T)hat convicts him of contributory negligence as a matter of law."

The court refused to entertain this motion to strike plaintiff's evidence. Again, at the conclusion of all the evidence, the railroad renewed its motion to strike on the grounds formerly stated, and upon the additional ground that "the positive and direct testimony that the bell was rung is not offset in any way except by negative testimony, and there is no case of comparative negligence." This motion was also overruled and the railroad excepted, though, as stated above, the court did instruct the jury that Forbes was guilty of contributory negligence as a matter of law.

Several assignments of error are relied upon by the railroad which will be treated in accordance with their relative importance.

At the request of the plaintiffs and over the objection of the railroad the court instructed the jury as follows:

"The jury are instructed that by law that every railroad shall provide each locomotive engine passing upon its roads with a bell and such bell shall be rung continuously for a distance of forty feet before the place where the railroad crosses upon the highway or crossing; therefore, if you believe that the defendant railroad failed to ring its bell continuously as required by law, you are instructed that the defendant railroad is negligent as a matter of law; and if you further believe from the evidence that such failure was the proximate cause of the accident you shall find for the plaintiffs, Forbes and C. F. Mueller Company, even though you believe that the plaintiff failed to exercise due care in approaching the railroad crossing, as this shall not bar his recovery for his injuries, but may be considered in mitigation of damages."

The railroad's objections to the giving of this instruction were: (1) It submitted to the jury the doctrine of comparative negligence (Code, § 56-416) when there was no evidence upon which to predicate the doctrine; and (2) that the plaintiffs had failed to establish by positive evidence "that the bell was not rung".

The first objection to the instruction was predicated upon the ground that the accident occurred in the City of South Norfolk and that the statute authorizing the comparative negligence rule did not apply unless an ordinance had been adopted by the municipality embodying the doctrine; and further, that if such an ordinance had been adopted by the city in this instance it had not been proved before the jury as provided by law. 7 M. J., Evidence, §5, pp. 322, 323.

If in fact the ordinance was not proved then the comparative negligence principle established by § 56-416 of the Code was not ap-

plicable and the contributory negligence of Forbes barred any re-covery by the plaintiffs as at common law. The record is silent as to the proof of the ordinance, but there does appear a discussion of such an ordinance before the Judge in chambers, and the defendant offered and was granted Instruction D-8, telling the jury that Forbes' contributory negligence would bar recovery unless the de-fendant failed to ring the bell, in which event the comparative neg-ligence doctrine would apply. This instruction would not have been proper unless the ordinance was in evidence.

However, if we assume that the ordinance was properly proved, the plaintiffs were still not entitled to recover under the evidence. The objection that plaintiffs had failed to prove by positive evidence that the railroad did not ring the bell was well taken and is in our view controlling. This alleged breach of duty resting upon the railroad was the gravamen of plaintiffs' claims. If the plaintiffs have failed to carry the burden of establishing the fact that the bell was not ringing, then the railroad is free from negligence and the doctrine of comparative negligence is unavailing even if the ordi-nance had been established and proved as required by law.

In an attempt to establish this act of negligence plaintiffs intro-duced four witnesses, namely: Police officer A. R. Bryant, W. R. Britton, Claude M. Forbes, and Vernon Reynolds the locomotive engineer.

Officer Bryant was not present at the time of the accident. He related a conversation with Conductor Stevenson and Fireman New-som, railroad employees. Bryant was asked if they had told him whether or not the bell was ringing, and he answered "I don't re-member asking either one if a bell was ringing, and by the same token I don't remember either one telling me it was." W. R. Britton was asked if he heard a bell or whistle, to which he replied: "I can't say whether I heard a bell or not or a whistle * * *." Clearly such evidence is without probative value.

Forbes was asked to describe his travel just prior to the accident. He stated: "Well, as I was coming up—say, I crossed Halifax street there—I drove with caution and I looked both ways as I usually do. I got up to this first set of tracks which is prior to the Growers Exchange building and I checked both ways there. Then I pro-ceeded on up to what they call the mainline. I did not hear any sounds of engines. I did not see any smoke. I did not hear any bell. I drove, as I said, cautiously, because you could not drive fast

there. I checked by looking to make sure that nothing was coming."

Forbes further testified that the left hand window of his truck was completely down (open), and that the right hand window, on the side from which the train was approaching, was down approximately 3 inches from the top with the vent to the window locked and the right door locked. He stated: "Then as I was across the second track—the first track had a parked boxcar on it—as I approached the second track and was about, I would say, halfway across, the engine collided with my car." His counsel asked:

"Q. Did you hear a bell or train whistle?
"A. I heard no bell nor train whistle.
"Q. Is there anything wrong with your ears?
"A. I don't know. The Army took me.
"Q. Is there anything wrong with your eyes?
"A. Perfect.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

"Q. And you heard no bell?
"A. I heard no bell."

It will be noted from the above evidence that Forbes nowhere claims to have listened for an approaching train. If he made any special effort to hear the ringing of the bell or the approach of the train he does not say so. He emphasizes the fact that he made an effort to see but he never says that he listened or made an effort to hear. He contents himself with saying "I heard no bell". He is evasive in his answer to his counsel's query as to his ability to hear, whereas he is positive that his vision is "perfect".

Forbes' evidence as to the ringing of the bell is purely negative and without probative value. This is especially true in the light of the positive evidence of the train crew that the bell was rung.

It is unnecessary for us to repeat what has been said many times in numerous Virginia cases coming before us wherein we have dealt with negative evidence such as here presented (and in many instances stronger), in which we have concluded such evidence to be lacking in probative value. See *So. Ry. Co.* v. *Bryant's Adm'r*, 95 Va. 212, 28 S. E. 183; *White* v. *So. Ry Co.*, 151 Va. 302, 144 S. E. 424; *Johnson* v. *R., F. & P. R. Co.*, 160 Va. 766, 778, 169 S. E. 603; *C. & O. Ry Co.* v. *Jacobs*, 166 Va. 11, 183 S. E. 221.

■ In addition to what has been stated, the railroad insists that plaintiffs are bound by the testimony of Vernon Reynolds, the locomotive engineer who was called, over the railroad's objection, as an adverse witness. While under examination by plaintiffs' counsel, Reynolds testified positively and unequivocally that the bell was rung in compliance with the law as set forth in plaintiffs' requested instruction, granted by the court and quoted above.

We have repeatedly held that when a plaintiff calls a defendant as an adverse witness, while he may not be bound by such of the witness' statements as may be in conflict with the evidence introduced on plaintiff's behalf, he is bound, and the court and jury are bound, by so much of the clear, logical testimony of the witness as is reasonable and uncontradicted. *Saunders* v. *Temple*, 154 Va. 714, 726, 153 S. E. 691; *Crabtree* v. *Dingus, et al.*, 194 Va. 615, 622, 74 S. E. (2d) 54, 58. The negative evidence of Forbes on the issue as to whether or not the bell was ringing is insufficient to contradict the positive testimony of Reynolds, and the plaintiffs are bound by the latter's evidence.

A. W. Newsom, the locomotive fireman, was called by the railroad. He testified that he had turned the bell on prior to the accident and that it continued to ring until after the collision. This testimony is fully corroborated by other members of the train crew. Conductor Stevenson stated that "the bell was ringing when we approached the crossing, and it was ringing after it hit, and it was ringing when the fireman left the engine * * *." Brakemen Brinkley and Sutton testified to the same effect.

In the light of the positive, direct testimony of these witnesses, as contrasted with the purely negative testimony of plaintiffs' witnesses, we are of the opinion that the plaintiffs have failed to carry the burden of proving that the bell was not ringing, and the court erred in submitting this question of negligence to the jury.

For the reasons stated the verdicts are set aside and final judgments are entered for the railroad. (Code, § 8-493).

*Reversed and final judgments.*