COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges Fulton and Ortiz
Argued at Richmond, Virginia


J&R ENTERPRISES, ET AL.

                                                              OPINION BY
v.        Record No. 0697-23-2                        JUDGE DANIEL E. ORTIZ
                                                              APRIL 23, 2024

WARE CREEK REAL ESTATE CORP., ET AL.


FROM THE CIRCUIT COURT OF NEW KENT COUNTY
B. Elliott Bondurant, Judge

Benjamin P. Kyber (Kevin W. Mottley; The Mottley Law Firm PLC,
on briefs), for appellants.

Christopher W. McDonald (Kevin A. Lake; McDonald, Sutton &
Duval, PLC, on brief), for appellees.


An adverse witness's testimony may not bind a calling party if it is inherently incredible. To determine this, a circuit court must sift through the testimony to ascertain what is and what is not inherently incredible. Appellants, J&R Enterprises and Thomas L. White, as the executor of the estate of John R. Filichko and trustee of the John R. Filichko Revocable Trust (collectively "J&R"), seek to enforce a judgment against Ware Creek Real Estate Corp. ("WCRE"), Ware Creek Building Corp. ("WCBC"), and W. Walker Ware, IV (collectively "WCRE") by piercing WCRE's corporate veil and reverse piercing WCBC's corporate veil. The circuit court applied the adverse witness rule to bind J&R to all of Ware's testimony, as J&R's sole witness. The court then granted WCRE's motion to strike and entered judgment for defendants. Because the circuit court failed to sift through Ware's testimony and then declared Ware's testimony binding on J&R despite finding it all to be incredible, we reverse the judgment and remand consistent with the instructions set forth in this opinion.

PUBLISHED

BACKGROUND

Following a bench trial in December 2010, the circuit court awarded WCRE a money judgment against J&R in the sum of $300,000 regarding a real estate brokerage commission dispute. On appeal, the Supreme Court reversed the award. The Court remanded the case for consideration of J&R's request for attorney fees incurred below and on appeal. On remand, the circuit court awarded J&R $76,812.73 in costs and fees. J&R then filed a complaint against Ware, WCRE, and WCBC,[1] seeking to pierce WCRE's corporate veil and reverse pierce WCBC to collect its judgment.

WCRE is a real estate brokerage firm. WCBC was initially established to construct homes. After 2010, however, WCBC stopped doing home construction and mostly engaged in smaller renovation projects. During the five years before the trial, both corporations had no other shareholders, officers, directors, or employees—Ware "alone control[ed]" them as sole owner and shareholder. WCRE and WCBC have been winding down and have not filed federal or state tax returns in several years. Neither WCRE nor WCBC has earned any revenue since 2017 and 2018 respectively, apart from a sale of Ware's own real estate in 2021 and a few listings he acquired about a month before the hearing. Neither corporation owns any personal property—other than some office supplies—nor real estate; rather, both operate out of a single building, which Ware owns. WCRE and WCBC's only other source of funds is loans from Ware.[2]

---

[1] The complaint also named Ware Creek Corp. ("WCC") and sought to reverse pierce its corporate veil, but the circuit court entered an order nonsuiting J&R's claim against it on November 1, 2022.

[2] Ware made $1,841,501.12 in purported loans to WCRE between 1998 and sometime in 2019. During this time, Ware made loans to WCBC totaling $1,122,217.73. No loan repayment notes in the accounting records of either company were submitted into evidence.

At the bench trial, J&R presented WCRE and WCBC's credit card statements, loans, canceled checks, and financial records, to demonstrate Ware's use of WCRE and WCBC to pay for alleged personal expenses. J&R also called Ware as its only witness. As the sole owner and shareholder of WCRE and WCBC, the circuit court declared Ware to be an adverse witness. Ware's testimony largely related to whether expenses paid for by WCRE and WCBC were incurred for valid business purposes. These expenses included charges for numerous restaurants, amusement park and movie theater tickets, medical procedures and supplements, jewelry, taxes on a boat and real estate property owned by Ware, and grocery and retail purchases. As J&R's counsel questioned Ware about these expenses, he struggled to recall most details about the purchases, though he often maintained that they were indeed legitimate business expenses. He insisted that—although WCRE and WCBC had not earned profits since 2017 and 2018 respectively, had no other employees, nor performed work for any customers at the time—any and all expenses were business related and not personal.

At the conclusion of J&R's evidence, WCRE moved to strike. The circuit court sustained the motion, finding that although Ware's testimony was "inherently incredible," the documents submitted into evidence failed to prove that the expenses paid were for improper business purposes. The circuit court acknowledged that the financial statements "may raise questions" regarding the legitimacy of WCRE's and WCBC's expenses but concluded that the adverse witness rule precluded the court from "infer[ring] anything" from those statements. On March 30, 2023, the circuit court entered summary judgment in favor of WCRE, in accordance with Rule 1:11, and dismissed J&R's complaint.

ANALYSIS

## I. Standard of Review

When reviewing a circuit court's decision on a motion to strike, an appellate court must "review the evidence in the light most favorable to the non-moving party." *Kiddell v. Labowitz*, 284 Va. 611, 629 (2012). As a result, we must give J&R "the benefit of all substantial conflict in the evidence, and all fair inferences that may be drawn therefrom." *Hadeed v. Medic-24, Ltd.*, 237 Va. 277, 281 (1989) (quoting *Matney v. Cedar Land Farms, Inc.*, 216 Va. 932, 934 (1976)). The question for this Court is whether "upon a careful consideration of all the evidence, . . . reasonable [people] may differ on the conclusion to be reached." *Walton v. Walton*, 168 Va. 418, 422 (1937) (omission in original).

In other words:

> [T]he trial court should resolve any reasonable doubt as to the sufficiency of the evidence in plaintiff's favor and should grant the motion only when it is conclusively apparent that plaintiff has proven no cause of action against defendant, or when it plainly appears that the trial court would be compelled to set aside any verdict found for the plaintiff as being without evidence to support it.

*Collelo v. Geographic Servs., Inc.*, 283 Va. 56, 67 (2012).

## II. Adverse Witness Rule

When a party has called an adverse witness, their testimony is usually "'binding' on the calling party." *Colas v. Tyree*, 302 Va. 17, 26 (2023) (quoting Kent Sinclair, *The Law of Evidence in Virginia* § 15-40[c], at 1183 (8th ed. 2018)). "The rule is apparently grounded in the notion that, '[b]y calling the witness . . . a party represents him to the court as worthy of credit.'" *Id.* (alterations in original) (quoting 1 Francis Wharton, *A Commentary on the Law of Evidence in Civil Cases* 523-24 (1877)). But the testimony is binding only if it is "uncontradicted and is not inherently improbable." *Economopoulos v. Kolaitis*, 259 Va. 806, 812 (2000). A court

reviews adverse witness testimony differently from the way it weighs the sufficiency of ordinary evidence. "[T]he adverse party witness rule requires a reviewing court to examine the testimony of a party called as a witness by the opposing party and to sift what is uncontradicted from what is contradicted (or inherently incredible)." *Colas*, 302 Va. at 28. If testimony *is* contradicted or inherently incredible, the plaintiff is not bound by it. *See id.* On the other hand, if the testimony is "clear, logical, reasonable, and not in conflict with plaintiff's evidence," it is binding.[3] *S & W Motor Lines, Inc. v. Bayliss*, 212 Va. 124, 125 (1971); *see also Beale v. Jones*, 210 Va. 519, 522 (1970).

In *Colas v. Tyree*, the Supreme Court reversed a jury finding for Tyree's estate on its claim of battery against Detective Colas, who shot and killed Tyree during a standoff with police. *Colas*, 302 Va. at 21-24. Applying the adverse witness rule, the Supreme Court found no evidence to contradict the detective's account that he was justified in firing the shot because he was acting in the defense of another officer when Tyree raised a knife in close proximity to the officer. *Id.* at 31-33. Because Colas's testimony was uncontradicted and not inherently improbable, the estate was bound by his testimony. *Id.* at 33.

Here, J&R called Ware to testify. So, his testimony is binding on J&R, but only insofar as it is uncontradicted on a given factual point, is "clear, reasonable, logical," and not incredible. *See S & W Motor Lines*, 212 Va. at 125. Although the circuit court found Ware's testimony to be "inherently incredible," the court found that it was bound by the testimony and could not infer or speculate about the business purpose of each expense from the financial records—the only other evidence submitted by J&R. But a finding of inherent incredibility is a recognized

---

[3] The Supreme Court has "repeatedly rejected the notion that the 'positive testimony' of an adverse party witness . . . can be overcome by . . . inferences"—or speculation—"drawn from primary facts, or 'negative' testimony from a witness." *Colas*, 302 Va. at 28; *see also Ragland v. Rutledge*, 234 Va. 216, 219 (1987); *Norfolk & Portsmouth Belt Line R.R. Co. v. C.F. Mueller Co.*, 197 Va. 533, 537-40 (1955).

exception to the adverse witness rule. *See Colas*, 302 Va. at 31 ("The plaintiffs are bound by the testimony from this adverse party witness unless it is contradicted or inherently incredible or improbable."). The circuit court's finding of incredibility cannot then support the application of the adverse witness rule.

Furthermore, the method the court determined Ware's incredibility was inconsistent with the test laid out in *Colas*, as the court should not "look to the witness's credibility *globally*," like it did here. *Id.* at 28 (emphasis added). Rather, the court should have "sift[ed]" through the testimony to determine what was and was not credible or contradicted. *Id.*; *see also* Sinclair, *supra*, at 1183 (the rule applies "only to so much of the adverse witness's testimony as is not contradicted by or in conflict with the calling party's other evidence").

If Ware's testimony is not inherently incredible on *a specific factual point*, J&R is bound by it. The opposite is also true—if Ware's testimony *is* inherently incredible on a particular factual point, J&R is not bound by it and the court can draw any reasonable inferences from the evidence. Accordingly, the court might find Ware's testimony about the status of WCRE and WCBC, as well as his admissions that he made certain purchases, to be credible. But the court might also disregard other parts of his testimony, such as his assessment of an expense's business purpose, for being incredible. Consistent with the circuit court's role as factfinder, we remand for the court to sift Ware's testimony, consistent with *Colas* and the adverse witness rule.

CONCLUSION

The circuit court erred in applying the adverse witness rule to Ware's testimony. Thus, we reverse the motion to strike and remand with instructions to reconsider the evidence, binding J&R to only those portions of Ware's testimony that are not inherently incredible, and then determine whether J&R put forward sufficient evidence to survive a motion to strike.

*Reversed and remanded.*